UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

MICHAEL SCOTT PIETILA,

           Plaintiff,

v.                             Case No. 17-cv-1588-WED-PP

CO ROPER, *et al.*,

           Defendants.

---

**DECISION AND ORDER GRANTING THE PLAINTIFF'S MOTION FOR LEAVE TO PROCEED WITHOUT PREPAYMENT OF THE FILING FEE (DKT. NO. 2), SCREENING THE COMPLAINT (DKT. NO. 1) AND DENYING THE PLAINTIFF'S MOTIONS TO APPOINT COUNSEL (DKT. NOS. 5, 9)**

---

This case currently is assigned to Judge William E. Duffin. Although the plaintiff has consented to Judge Duffin hearing and deciding the case, the defendants have not yet had the opportunity to decide whether to consent, because until now, the court has not screened the complaint and decided whether it should be served on the defendants. Because *both* parties have not yet consented to the magistrate judge hearing the case, the district court judge will screen the complaint.

**I.    THE PLAINTIFF'S MOTION FOR LEAVE TO PROCEED WITHOUT PREPAYMENT OF THE FILING FEE**

The Prison Litigation Reform Act ("PLRA") applies to this case because the plaintiff was incarcerated when he filed the complaint. 28 U.S.C. §1915. The PLRA allows an incarcerated plaintiff to proceed with a case in federal court without prepaying the full civil case filing fee, as long as he pays an

1

initial partial filing fee. 28 U.S.C. §1915(b). Once the plaintiff pays the initial partial filing fee, he can pay the balance of the $350 filing fee over time, through deductions from his prisoner account. Id.

On December 1, 2017, Judge Duffin assessed an initial partial filing fee of $0.11. Dkt. No. 8. The plaintiff responded by sending the court a letter, explaining that he cannot pay this amount because the Department of Corrections takes all of his money to pay for court ordered restitution. Dkt. No. 10. He states that he has not made any canteen purchases or otherwise spent his money. Id.

Section 1915(b)(4) states that "[i]n no event shall a prisoner be prohibited from bringing a civil action or appealing a civil or criminal judgment for the reason that the prisoner has no assets and no means by which to pay the initial partial filing fee." "Section 1915(b)(4) comes into play only when 'the prisoner has no assets and no means by which to pay the initial partial filing fee.'" Lindell v. McCaughtry, No. 01-C-209-C, 2004 WL 225074, at *1 (W.D. Wis. Jan. 23, 2004). "A prisoner with periodic income has 'means' even when he lacks 'assets.'" Id.

The court has reviewed the plaintiff's trust fund activity statement. Dkt. No. 7. Although the plaintiff has average monthly deposits of $0.46, the plaintiff does not have access to this money because the entire amount is automatically withdrawn each month to pay for restitution, medical co-pay and legal loans. See id. The court concludes that the plaintiff has neither the assets

nor the means to pay the initial partial filing fee. The court will waive the initial partial filing fee and will allow the plaintiff to proceed without prepaying it.

II.  **SCREENING OF THE PLAINTIFF'S COMPLAINT**

   A.  Standard for Screening Complaints

The PLRA requires federal courts to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. §1915A(a). The court may dismiss a case, or part of it, if the claims alleged are "frivolous or malicious," fail to state a claim upon which relief may be granted, or seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915(e)(2)(B).

To state a claim under the federal notice pleading system, the plaintiff must provide a "short and plain statement of the claim showing that [he] is entitled to relief[.]" Fed. R. Civ. P. 8(a)(2). The complaint need not plead specific facts, and need only provide "fair notice of what the . . . claim is and the grounds upon which it rests." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). "Labels and conclusions" or a "formulaic recitation of the elements of a cause of action" will not do. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 555).

The factual content of the complaint must allow the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. Allegations must "raise a right to relief above the speculative level."

Twombly, 550 U.S. at 555. Factual allegations, when accepted as true, must state a claim that is "plausible on its face." Iqbal, 556 U.S. at 678.

Federal courts follow the two-step analysis in Twombly to determine whether a complaint states a claim. Id. at 679. First, the court determines whether the plaintiff's legal conclusions are supported by factual allegations. Id. Legal conclusions not supported by facts "are not entitled to the assumption of truth." Id. Second, the court determines whether the well-pleaded factual allegations "plausibly give rise to an entitlement to relief." Id. The court gives *pro se* allegations, "however inartfully pleaded," a liberal construction. See Erickson v. Pardus, 551 U.S. 89, 94 (2007) (quoting Estelle v. Gamble, 429 U.S. 97, 106 (1976)).

B.   Facts Alleged in the Complaint

The plaintiff is incarcerated at the Waupun Correctional Institution ("WCI"). Dkt. No. 1. The defendants are Correctional Officer Roper, Correctional Officer Hess, Correctional Officer Gripentrog, Sergeant Moungey, Captain Tritt, Correctional Officer Demers, Captain Westra, Angelia Kroll and Warden Brian Foster. Id.

The plaintiff alleges that on June 28, 2017, Roper used "false allegations" to retaliate against the plaintiff. Id. at 2. He says that Roper had "made some unwanted passes" at the plaintiff, and the plaintiff called the Prison Rape Elimination Act (PREA) number. Id. The plaintiff alleges that he is seriously mentally ill. Id.

4

The plaintiff also alleges that Roper used "excessive force" and "lies" to retaliate against the plaintiff, and that Hess followed suit. Id. The plaintiff says that a hallway video monitor in the A-range documented a "false report" and the use of excessive force by Roper and Westra. Id. at 2-3. He asserts that Demers "used excessive force on [the plaintiff's] left wrist," that Grippentrog and Roper "choked [the plaintiff] unnecessarily," that Hess and Moungey "did not step in and relieve anyone breaking federal and state laws," and that Tritt (a supervisor) "witnessed part of the excessive force without reprimand of guilty parties." Id. at 2-3.

The plaintiff says that Westra cut his hearing short when the plaintiff started questioning Roper about "how he was capable of being around [the plaintiff] during a PREA investigation." Id. at 3. He says that Kroll, who was his advocate, "failed to defend [him] in any way." Id. He claims that Foster "failed to uphold his part in the appeals process with a typical dismissive and monotonas [sic] answer." Id. For relief, the plaintiff asks the court to move him to a mental health facility, and asks for monetary damages. Id. at 4.

C.     <u>Legal Analysis of Alleged Facts</u>

To state a claim under 42 U.S.C. §1983, the plaintiff must allege that: 1) he was deprived of a right secured by the Constitution or laws of the United States; and 2) the deprivation was visited upon him by a person or persons acting under color of state law. <u>Buchanan-Moore v. County of Milwaukee</u>, 570 F.3d 824, 827 (7th Cir. 2009) (citing <u>Kramer v. Vill. of N. Fond du Lac</u>, 384 F.3d 856, 861 (7th Cir. 2004)).

5

1. *First Amendment Retaliation*

To state a claim for retaliation, the plaintiff must show that: (1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation that would likely deter First Amendment activity in the future; and (3) the First Amendment activity was "at least a motivating factor" in the defendants' decision to take the retaliatory action. Bridges v. Gilbert, 557 F.3d 541, 553 (7th Cir. 2009). In the prison context, the First Amendment right to petition the government for redress of grievances includes the right to pursue "administrative remedies that must be exhausted before a prisoner can seek relief in court." DeWalt v. Carter, 224 F.3d 607, 618 (7th Cir. 2000).

The plaintiff states that he called the PREA number to file a complaint against Roper for making "unwanted passes." Calling the PREA hotline to report alleged sexual misconduct constitutes activity protected by the first amendment. He implies that it was because of this call that Roper allegedly made false allegations against him and used excessive force (choking him). In other words, he alleges that because he took the constitutionally-protected step of calling to allege sexual misconduct by Roper, Roper took action—making a false report and choking him—that likely would deter the plaintiff from exercising his First Amendment rights in the future. The court finds that, at this early stage of the litigation, the plaintiff has alleged sufficient facts to allow him to proceed on a First Amendment retaliation claim against Roper.

2. *Eighth Amendment Excessive Force*

The Eighth Amendment prohibits prison authorities from "unnecessarily

and wantonly inflicting pain on inmates." See Rivera v. Drake, 497 F. App'x 635, 637 (7th Cir. 2012). Use of force that is maliciously motivated, unrelated to institutional security and which lacks a legitimate penological justification violates the Eighth Amendment. Id. (citing Hope v. Pelzer, 536 U.S. 730.737 (2002)). "Infliction of pain that is totally without penological justification is *per se* malicious." Fillmore v. Page, 358 F.3d 496, 504 (7th Cir. 2004).

The plaintiff states Demers used excessive force on his left wrist. He alleges that Grippentrog and Roper choked him unnecessarily. Although the complaint does not contain many details, the court finds that at this stage, the plaintiff has alleged sufficient facts to support a claim that Demers, Grippentrog and Roper used excessive force against him. While the plaintiff mentions Westra's name in connection with the hallway video, he does not make any specific allegations that Westra used excessive force, and the court will not allow him to proceed on an excessive force claim against Westra.

        3.     *Failure to Intervene*

An official who "'ha[s] a realistic opportunity to step forward and prevent a fellow officer from violating a plaintiff's right through the use of excessive force but fail[s] to do so' may be held liable" under §1983. Harper v. Albert, 400 F.3d 1052, 1064 (7th Cir. 2005) (quoting Miller v. Smith, 220 F.3d 491, 495 (7th Cir. 2000)).

The plaintiff claims that Hess, Moungey and Tritt witnessed the event during which Demers, Hess and Roper used excessive force against him, but did not intervene. Again, the complaint is very slim on details. But the court

7

concludes that the plaintiff has stated enough to allow him to proceed on a failure-to-intervene claim against Hess, Moungey and Tritt.

4.   *Fourteenth Amendment Procedural Due Process*

The plaintiff also implies that there were problems with the disciplinary hearing and appeals process for the "false report." A prisoner challenging the due process afforded him in a prison disciplinary proceeding must show that: (1) he has a liberty or property interest with which the state interfered; and (2) the procedures he was afforded upon that interference were constitutionally deficient. Ky. Dep't of Corr. v. Thompson, 490 U.S. 454, 460 (1989); Marion v. Columbia Corr. Inst., 559 F.3d 693, 697 (7th Cir.2009); Scruggs v. Jordan, 485 F.3d 934, 939 (7th Cir.2007). "A prisoner has no liberty interest in remaining in the general population." Lekas v. Briley, 405 F.3d 602, 607 (7th Cir. 2005). To implicate the due process clause, plaintiff must allege that the length of any segregation, along with the conditions of segregation, constituted an "atypical and significant hardship." Sandin v. Conner, 515 U.S. 472, 484 (1995).

The plaintiff states that Westra cut his disciplinary hearing short when the plaintiff started to question Roper about the PREA call; that Kroll did not properly defend him; and that Foster took a dismissive attitude towards the plaintiff's appeal. The plaintiff does not say whether he received a disciplinary sanction as a result of the hearing. He does not allege that he got any time in segregation; if he did, he doesn't state how long he was in, and does not describe the conditions of the segregation. Therefore, the plaintiff has not implicated a liberty interest, and the court will not allow him to proceed with

8

any procedural due process claims arising out of the disciplinary hearing or appeal. For this reason, the court will dismiss Westra, Kroll and Foster as defendants.

**III. THE PLAINTIFF'S MOTIONS TO APPOINT COUNSEL**

The plaintiff filed two motions asking the court to appoint counsel. Dkt. Nos. 5, 9. In a civil case, the court has discretion to recruit a lawyer for someone who cannot afford one. Navejar v. Iyola, 718 F.3d 692, 696 (7th Cir. 2013). The plaintiff must first make reasonable efforts to hire private counsel on his own. Pruitt v. Mote, 503 F.3d 647, 653 (7th Cir. 2007). In this district, a plaintiff can satisfy this requirement by providing the court with: (1) the attorneys' names, (2) the addresses, (3) the date and way the plaintiff attempted to contact them, and (4) the attorneys' responses.

Once the plaintiff makes reasonable attempts to hire counsel, the court must decide "whether the difficulty of the case – factually and legally – exceeds the particular plaintiff's capacity as a layperson to coherently present it." Navejar, 718 F.3d at 696 (citing Pruitt, 503 F.3d at 655). The court looks not only at the plaintiff's ability to try his case, but also at his ability to perform other "tasks that normally attend litigation," such as "evidence gathering" and "preparing and responding to motions." Id. "[D]eciding whether to recruit counsel 'is a difficult decision: Almost everyone would benefit from having a lawyer, but there are too many indigent litigants and too few lawyers willing and able to volunteer for these cases.'" Henderson v. Ghosh, 755 F.3d 559, 564 (7th Cir. 2014) (quoting Olson v. Morgan, 750 F.3d 708, 711 (7th Cir. 2014)).

9

The court is satisfied that the plaintiff has made reasonable attempts to hire a lawyer himself. See Dkt. No. 9 at 1-2. The court will not, however, appoint counsel at this time. The plaintiff's complaint, while lacking in detail, describes what happened to him and why he believes the defendants violated his constitutional rights. Although the plaintiff is not legally trained and has been diagnosed with mental illnesses, his writing is coherent enough, and the court understands what the plaintiff is attempting to say.

The plaintiff explains that he is "severely overwhelmed with trying to figure out how to go forward with these 4 cases." Dkt. No. 9 at 1. The court understands that handling a court case is very difficult for someone without legal training, not to mention someone who has been diagnosed with mental illness and physical problems, and who is in custody. At this point, however, there isn't anything for a lawyer to do to help the plaintiff. Now that the court has screened his complaint, it will order that the complaint be served on the defendants. All the plaintiff must do now is wait for the defendants to file an answer. If and when the defendants file an answer, Judge Duffin will issue a scheduling order with instructions on how to conduct discovery and file dispositive motions. The court will deny the plaintiff's motion to appoint counsel without prejudice; this means he may ask again in the future if the case becomes so complicated that he cannot handle it.

**IV. CONCLUSION**

The court **GRANTS** the plaintiff's motion for leave to proceed without prepayment of the filing fee. Dkt. No. 2. The court **ORDERS** the agency having

10

custody of the plaintiff to collect from the plaintiff's prison trust account the **$350.00** balance of the filing fee by collecting monthly payments from the plaintiff's prison trust account in an amount equal to 20% of the preceding month's income credited to the prisoner's trust account and forward payments to the Clerk of Court each time the amount in the account exceeds $10 in accordance with 28 U.S.C. §1915(b)(2). The agency shall clearly identify the payments by the case name and number. The court will send a copy of this order to the officer in charge of the agency where the plaintiff is confined. If the plaintiff is transferred to another institution—county, state or federal—the transferring institution shall forward a copy of this order, along with the plaintiff's remaining balance, to the receiving institution.

The court **ORDERS** that defendants Westra, Kroll and Foster are **DISMISSED**.

The court **ORDERS** that the plaintiff's motion and second motion to appoint counsel are **DENIED** without prejudice. Dkt. Nos. 5, 9.

The court **ORDERS** that, under an informal service agreement between the Wisconsin Department of Justice and this court, copies of plaintiff's complaint and this order are being electronically sent today to the Wisconsin Department of Justice for service on defendants Roper, Hess, Demers, Grippentrog, Moungey and Tritt. These defendants shall file a responsive pleading to the complaint within sixty days of receiving electronic notice of this order.

The court **ORDERS** that the parties may not begin discovery until after Judge Duffin enters a scheduling order setting deadlines for discovery and dispositive motions.

The court **ORDERS** the clerk's office to return this case to Judge Duffin for further proceedings.

The court **ORDERS** that, under the Prisoner E-Filing Program, the plaintiff shall submit all correspondence and case filings to institution staff, who will scan and e-mail documents to the Court.[1] If the plaintiff is no longer incarcerated at a Prisoner E-Filing institution, he will be required to submit all correspondence and legal material to:

> Office of the Clerk
> United States District Court
> Eastern District of Wisconsin
> 362 United States Courthouse
> 517 E. Wisconsin Avenue
> Milwaukee, Wisconsin 53202

The court advises the plaintiff that if he does not file documents or take other actions by the deadlines Judge Duffin sets, it may result in the court dismissing his case for failure to prosecute. The parties must notify the Clerk of Court of any change of address. Failure to do so could result in orders or other

---

[1] The Prisoner E-Filing Program is mandatory for all inmates of Dodge Correctional Institution, Green Bay Correctional Institution, Waupun Correctional Institution, Wisconsin Secure Program Facility, Columbia Correctional Institution, and Oshkosh Correctional Institution.

information not being timely delivered, thus affecting the legal rights of the parties.

Dated in Milwaukee, Wisconsin this 5th day of March, 2018.

**BY THE COURT:**

_____
**HON. PAMELA PEPPER
United States District Judge**